FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 DEC 17  PM 3: 36

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Barbara S. Sale* | *Suite 400* | *DIRECT: 410-209-4902* |
| *Chief, Criminal Division* | *36 S. Charles Street* | *MAIN: 410-209-4800* |
| *Barbara.Sale@usdoj.gov* | *Baltimore, MD 21201-3119* | *FAX: 410-962-0717* |

June 23, 2014

James Wyda, Esq.
Federal Public Defender
Office of the Federal Defender
100 S. Charles Street
9th Floor
Baltimore, MD 21201

**VIA E-MAIL**

Re:  *United States v. Barry S. Robinson*
     Criminal No. CCB-14-0512

Dear Mr. Wyda:

       This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to your client, Mr. Robinson, the defendant, by the United States Attorney's Office for the District of Maryland ("this Office"). If Mr. Robinson accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by August 15, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.     The defendant agrees to plead to the Indictment that charges him with two counts of theft and bribery concerning programs receiving federal funds, in violation of 18 U.S.C. § 666 (a)(1)(A) and (B) and one count of money laundering, in violation of 18 U.S.C.§1956(a)(1)(B)(i) . The defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

### Elements of the Offenses

2.     The elements of the offenses to which the defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    (a) <u>Theft or Bribery Concerning Programs Receiving Federal Funds</u>

- That Mr. Robinson was, at the relevant time, an agent of the Baltimore City, Maryland government, specifically of the Baltimore City Department of Transportation;

- That in the one-year period between April 9, 2013 and April 9, 2014, the Baltimore City Department of Transportation received benefits exceeding $10,000 under

1

federal programs involving grants, loans, subsidies and other forms of federal assistance;

### Count One

- That Mr. Robinson corruptly solicited, demanded or agreed to accept money from another person,
    - intending to be influenced in connection with the business of the Baltimore City Department of Transportation
    - Involving $5000 or more, *and*
    - 

### Count Two

- That Mr. Robinson embezzled, stole, obtained by fraud or otherwise without authority knowingly converted to the use of a person other than the rightful owner
    - Property owned by, or under the care, custody and control of the Baltimore City Department of Transportation
    - Valued at $5000 or more.

(b) <u>Money Laundering</u>

### Count Three

- That Mr. Robinson conducted, caused to be conducted or initiated a financial transaction,

- That at the time of the transaction, he knew
    - that the money involved in the transaction was the proceeds of his own bribery offenses,
    - that the transaction was designed at least in part to conceal or disguise the nature, location and source of the funds.

<u>Penalties</u>

3.      The maximum sentences provided by statutes for the offenses to which the defendant is pleading guilty is as follows: Counts One and Two: ten years' incarceration, plus a fine of $250,000, and supervised release for a term of three years; Count Three: twenty years' incarceration, plus a fine of $500,000 and supervised release for a term of 5 years. In addition, the defendant must pay $300 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. The Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The defendant understands that if he serves a term of imprisonment, is released on supervised

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which he will serve any term of imprisonment imposed.

### Waiver of Rights

4. Mr. Robinson understands that by entering into this agreement, he surrenders certain rights as outlined below:

(a) If the defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the defendant, this Office, and the Court all agreed.

(b) If the defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before Mr. Robinson could be found guilty of any count. The jury would be instructed that the defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

(c) If Mr. Robinson went to trial, the government would have the burden of proving him guilty beyond a reasonable doubt. The defendant would have the right to confront and cross-examine the government's witnesses. The defendant would not have to present any defense witnesses or evidence whatsoever. If your client wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

(d) Mr. Robinson would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

(e) If the defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against his. By pleading guilty, the defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

(f) By pleading guilty, Mr. Robinson will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

(g) If the Court accepts your client's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

3

(h) By pleading guilty, the defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Mr. Robinson nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. Mr. Robinson understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. He further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt. This Office maintains that the following Sentencing Guidelines calculations apply. It is understood that the defendant may take issue with these and may present alternative loss calculations at sentencing.

| | |
|---|---|
| Base offense level for Counts 1 and 2: U.S.S.G.§2B1.1(a)(2) | 6 |
| Specific Offense Characteristics (loss): U.S.S.G.§2B1.1(b)(1)(G) | +12 |
| Abuse of Position of Trust U.S.S.G.§3B1.3 | +2 |
| | 20 |
| | |
| Base offense level for Count 3: U.S.S.G. §2S1.1(a)(1) | 18 |
| Specific Offense Characteristic: U.S.S.G. §2S1.1(b)(2)(B) | +2 |
| | 20 |

Under the grouping rules set out in U.S.S.G. §3D1.1, Counts One, Two and Three are considered closely related counts and therefore a single group, resulting in no increase in offense level.

This Office does not oppose a two-level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the defendant's timely notification of his intention to plead guilty. Therefore the final offense level, according to this Office's calculations, is 17. If the Court accepts a different loss figure proposed by the defendant, the resulting guideline may be less. This Office may oppose *any* adjustment for acceptance of responsibility if the defendant (a) fails to admit each and every item in the factual stipulation; (b)

4

denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

(a) Your client understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

(b) This Office understands that the defendant may offer a differing calculation as to the advisory guidelines range, and that the defense may argue for other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines or in 18 U.S.C. § 3553(a). If the defense does intend to raise other factors in accordance with this paragraph, it will give express notice to the Court and this Office no later than two weeks in advance of the sentencing date.

## Obligations of the United States Attorney's Office

7. At the time of sentencing, this Office will recommend a reasonable sentence within the guidelines as found by the Court, will recommend that the Court enter a restitution order, and will not recommend any fine.

8. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the defendant's background, character and conduct.

## Forfeiture

9. The defendant understands that the court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order will include assets directly traceable to his offense, substitute assets and/or a money judgment equal to the value of the property subject to forfeiture. Specifically, as a consequence of the Defendant's plea of guilty to the Criminal Information charging a violation of 18 U.S.C. § 666, the court will order the forfeiture of all proceeds obtained or retained as a result of the offense. The property to be forfeited includes $20,000.00, which represents the amount of bribe money accepted by the defendant as consideration for forgiving a debt owed to the City of Baltimore. It is understood that Mr. Robinson used a portion of the bribe money to make non-severable improvements to his home. Accordingly, he agrees that the forfeiture amount should equal the amount he received, less any sums recovered in the execution of seizure warrants.

10. The defendant agrees to consent to the entry of an order of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

5

### Assisting the Government with Regard to the Forfeiture

11. The defendant agrees to assist fully in the forfeiture of the foregoing assets. The defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The defendant also agrees to give this Office permission to request and review his federal and state income tax returns, and any credit reports maintained by any consumer credit reporting entity, until such time as the money judgment is satisfied. In this regard, the defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) as well as whatever disclosure form may be required by any credit reporting entity.

### Waiver of Further Review of Forfeiture

12. The defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, *habeas corpus*, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

### Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the defendant waive their rights to appeal as follows:

(a) The defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal his conviction;

(b) The defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed, including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and terms or conditions of supervised release.

(c) Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

(d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

14. Mr. Robinson agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

15. The defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the defendant will receive. Mr. Robinson agrees that no one has made such a binding prediction or promise.

### Entire Agreement

16. This letter supersedes any prior understandings, promises, or conditions between this Office and the defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

7

If Mr. Robinson fully accepts each and every term and condition of this agreement, please sign and have him sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: /s/ Barbara S. Sale
Barbara S. Sale
Assistant United States Attorney
Chief, Criminal Division

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12/15/14
Date

/s/ Barry S. Robinson
Barry S. Robinson

I am Barry Robinson's attorney. I have carefully reviewed every part of this agreement, including the Statement of Fact and the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

12/16/14
Date

/s/ James Wyda
James Wyda, Esq.

8

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 DEC 17 PM 3: 36

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

## ATTACHMENT A

## STATEMENT OF FACTS

*The United States and defendant Barry S. Robinson stipulate and agree that if this case proceeded to trial, the United States would prove the facts set forth below beyond a reasonable doubt. They further stipulate and agree that these are not all of the facts that the United States would prove if this case proceeded to trial.*

Barry S. Robinson was at all relevant times the Division Chief of Baltimore City Transit and Marine Services, a division of the Baltimore City Department of Transportation. Mr. Robinson had been employed by the City of Baltimore Department of Transportation since 2008.

### The Debt Forgiveness Scheme

A confidential source (referred to in the Indictment as "Person A") was the owner of a business (referred to in the Indictment as "Business #1") that was under contract with the Baltimore City Department of Transportation. Business #1 owed the City of Baltimore $40,000 resulting from advertisement sales. In the spring of 2013, Person A, through an intermediary, proffered a business check in the amount of $40,000 to satisfy the debt Business #1 owed to the City. In a meeting days later, Person A asked Mr. Robinson to return the check so she could meet payroll. Mr. Robinson slid the check back to Person A, saying that if she gave him $20,000, Person A could keep the remaining $20,000 and the debt to the City would be forgiven. Mr. Robinson said that he would render the debt satisfied and issue supporting documentation stating that the funds had been received by the City of Baltimore. Mr. Robinson stated that he intended to retire in summer 2014, but needed extra money, as he owed the IRS more than $70,000. The business owner accepted the $40,000 check back, but did not immediately accept Mr. Robinson's offer. The debt remained unpaid.

On January 10, 2014, at the request of the FBI, Person A met with Mr. Robinson to determine whether he was still interested in accepting a $20,000 bribe payment to cancel the $40,000

Page 1 of 4

debt. During the conversation, which was recorded, Mr. Robinson confirmed that he was still amenable to accepting the bribe payment, and offered to meet with Person A at a later date, one-on-one. Thus began a series of monitored and recorded conversations, not all of which are recounted in detail here.

In essence, starting in January 2014, Person A and the defendant discussed payment arrangements, whereby Person A would make cash payments to Mr. Robinson over the course of a month totaling the $20,000. Mr. Robinson confirmed that he would eliminate the debt to the City of Baltimore. Mr. Robinson emphasized that he wanted the entire $20,000 in a one-month period, and added that he would not only eliminate the $40,000 debt, but would also eliminate an additional $20,000 Business #1 owed to the City of Baltimore.

During meetings on January 23, January 30, February 25 and March 11, Person A made four $5,000 cash payments totaling $20,000 to Mr. Robinson. On March 11, 2014, he provided Person A a letter, dated the previous day, which he had typed, stating the following:

> This letter of financial commitment reflects [Business #1's] fulfillment of the $60,000 obligation to the City of Baltimore for advertising sales receipts through December 31, 2013. As of January 1, 2014 [Business #1] is absolved of all advertising sales responsibilities and obligations . . . .

### The Attempted Sale of City Property

At the meeting on February 25, 2014, Mr. Robinson raised the possibility of Person A's brokering a sale of 13 transportation shelters which the City of Baltimore had purchased for about $250,000. Mr. Robinson explained that he obtained the shelters, on behalf of Baltimore City government, using federal grant funds, that they were apparently not needed, and that the Baltimore City government was not aware of the shelters' existence. He requested that Person A negotiate a price for the shelters with a buyer, and accept payment. Person A would then cash the check given

Page 2 of 4

by the buyer of the shelters and give Robinson half of the proceeds in cash, keeping the remaining funds. Mr. Robinson informed Person A that the shelters were located at a private warehouse in Baltimore City, and that the City was paying monthly storage fees to the warehouse at his authorization.

On March 11, 2014, Person A informed Mr. Robinson that she had independently identified a potential buyer for the bus shelters who was willing to pay more than Robinson's buyer and told him that his share of the proceeds would be $70,000. Mr. Robinson agreed to accept that amount - roughly the same amount that he owed the IRS - for the City's shelters. (He had previously informed Person A that he owed $70,000 to the IRS).

On April 9, 2014, Person A met with Mr. Robinson and handed over the $70,000 cash purported to be for the sale of the transportation shelters. Agents of the FBI approached Mr. Robinson as he accepted the cash. He admitted both accepting a bribe to cancel the debt owed to the City and attempting to sell the City's bus shelters.

Baltimore Purchase Order (purchase order number P518131), dated November 17, 2011, which Mr. Robinson e-mailed to Person A from email account barry.robinson@baltimorecity.gov, shows that the transportation shelters were purchased by the City of Baltimore from a Canadian company at a cost of $249,290. The Baltimore City Department of Transportation received in excess of $10,000 in federal grant, loan and/or subsidy funding during each of the calendar years 2011, 2012 and 2013. For example, the Baltimore City Department of Transportation received approximately $4.9 million in federal funding in fiscal year 2011, the year in which the shelters were purchased. The Division of Transit and Marine Services, of which ROBINSON was head, is a division of the Baltimore City Department of Transportation.

Mr. Robinson caused the cash bribe payments he received to be deposited into two accounts

in another person's name: Bank of America account number ********6029 and Bank of America account ********6668, and used a portion of the proceeds to install carpeting, televisions and a range hood in his home.

I agree that this Statement of Facts is accurate and that I committed the offenses charged in the Indictment.

*Barry S. Robinson*
Barry S. Robinson

12/15/14
Date

Page 4 of 4